John E. Tiedt (SBN 134667)
Marc S. Hurd (SBN 130667)
**TIEDT & HURD**
1250 Corona Pointe Court, Suite 402
Corona, CA 92879
Phone: 951-549-9400
Fax: 951-549-9800
Email: jtiedt@tiedtlaw.com

Nathen W. Fransen, Esq. (SBN 242867)
**FRANSEN & MOLINARO, LLP**
4160 Temescal Canyon Road, Suite 306
Corona, California 92883
Phone: (951) 520-9684
Fax: (951) 277-7598
Email: nathan@fmattorney.com

Attorneys for Plaintiff,
SHAOHUI WANG, an individual

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In Re | CASE NO. 8:21-BK-12483-SC |
| YICHEN LIU, | Chapter 7 |
| Debtor. | ADV NO. |
| SHAOHUI WANG, an individual, | **COMPLAINT TO DETERMINE NON-DISCHARGABILITY OF DEBT** |
| Plaintiff, | |
| vs. | [11 U.S.C. §§ 523(a)(2), 523(a)(4)] |
| YICHEN LIU, an individual, | |
| Defendant. | |

Plaintiff, SHAOHUI WANG, an individual, ("Plaintiff"), and a judgment creditor of YICHEN LIU, an individual ("Defendant"), for her complaint hereby alleges and prays as follows:

**JURISDICTION AND VENUE**

1. This court has jurisdiction over this action to 28 U.S.C. §§ 1334 (a) and (b) and 157 (a) and (b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (I) and (O).

2. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409(a) in that

Defendant is the debtor in the instant title 11 case, which is pending in this court, and this adversary proceeding arises in and/or is related to Defendant's title 11 case.

## PARTIES

3. Plaintiff is and at all relevant times was an individual residing in the People's Republic of China.

4. Plaintiff is informed and believes, and based thereon alleges, that Defendant is and was at all relevant times an individual who has citizenship and has last resided in Irvine, California in the County of Orange.

## GENERAL ALLEGATIONS

5. Plaintiff alleges on information and belief that this case involves a fraudulent scheme perpetrated by Defendant Liu in connection with his material misrepresentations omissions in the statements made to Plaintiff in order to induce Plaintiff to provide over $300,000 to Defendant.

6. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant Yichen Liu claimed to be a successful business owner, who had successful businesses in both China and the US.

7. Plaintiff is informed and believes, and on that basis alleges, that from June 2014 to present, Defendant Yichen Liu has continuously engaged in fraudulent securities offerings and has raised significant amount of funds from investors in China who sought to immigrate to the United States.

8. Plaintiff is informed and believes, and on that basis alleges, that Defendant Yichen Liu engaged in a pattern of activity to unlawfully solicit investors, and misappropriate, divert, and misuse the funds raised from the investors, including Plaintiff in this case.

## GENERAL ALLEGATIONS

9. Defendant Liu and Plaintiff Wang are members of a certain unofficial online chat group, named "China-America Immigration Group" which is a group where people share their knowledge and information about immigration. It had over 300 members in 2014.

10. On or about June 24, 2014, Defendant Liu sent a message to the group, which would

be seen by all 300 members in the group, in solicitation for investment into his company.

11. The message was written in Chinese, as all members in the chat group were Chinese speaking. The message translates as follows:

"Here is the benefit I want to offer to the group members: My company in the U.S. requires $2 million of operating funds, and now it has more than $1 million (operating funds). Our company is in the business of mobile game operating platform in North America. Based on the annual income, tax payment, and number of employees, we can sponsor at least one L1 visa. My own immigration status has been basically solved. Because I am optimistic about the profitability of my project, I don't want to transfer too many shares through financing, and therefore I want to use the opportunity to do an L1 to raise money. To ensure success in obtaining L1 visa, I am only going to do one L1. I will be responsible to prepare all the documents of both the Chinese company and the American company, but I need this person: first, have not applied for Form 160 before; second, can get $300,000-$500,000 cash; third, after obtaining the visa, must stay in the United States. **There is zero risk. Twelve months after obtaining green card, the money put in my company will be returned.** This is me borrowing money from you, interest free for two years, and in return get you a green card. But the attorney fees in the US shall be paid by you. I will not share too much detail here. Please send me private message." (Emphasis added).

12. In or about August 2014, Plaintiff Wang contacted Defendant Liu following this message and learned that Defendant Liu also lived in Plaintiff's neighborhood in Beijing. Defendant Liu was in the United States at that time, but was planning to go back to Beijing in October 2014. They scheduled to meet in person in October 2014 to discuss about Defendant's proposal as stated in the chat group.

13. In or about October 2014, Defendant Liu and Plaintiff Wang met in Beijing in a café called Man Café. During this meeting, Defendant Liu told Plaintiff Wang that he obtained his "green card" through L-1 visa, and therefore was very familiar with the requirements and procedures of L-1 visa.

14. Defendant Liu also stated that he had a company in the U.S. and a Chinese parent

1  company, which met all of the requirements for sponsoring L-1 visa. Defendant Liu guaranteed to
2  Plaintiff that he could sponsor Plaintiff's L-1 visa. Defendant asked Plaintiff to "invest" $300,000
3  to Defendant's company. Defendant Liu repeatedly stated that if Plaintiff were unable to obtain the
4  L-1 visa, Defendant would refund all of the money to Plaintiff.

5  15.    Defendant Liu claimed that he had friends in Shanghai and Hangzhou who were
6  also interested in investing in his company to obtain the L-1 visa, but his company could only
7  sponsor one visa. Defendant urged Plaintiff to make the decision faster.

8  16.    In an attempt to induce Plaintiff to invest with Defendant, Liu spoke with Plaintiff,
9  through telephone and in-person meetings, to discuss his businesses. Defendant Liu touted the
10 background of himself and his connections in the United States, that he knew the ins-and-outs
11 about L1 visa, and he emphasized times and again that if in the event Wang could not get her L1
12 visa, he would refund all of her money.

13 17.    Plaintiff was lured into Liu's fraudulent scheme because Plaintiff reasonably
14 believed Liu's representations.

15 18.    On November 26, 2014, Liu sent a word document entitled "Project Statement" to
16 Wang ("Project Statement"), and proposed a plan. In this plan, Liu stated the requirements for L1
17 visa. According to Liu, there are essentially three requirements. First, the applicant needs to be a
18 managerial executive in the Chinese parent company, and the Chinese parent company has to be
19 operating for at least three years, with annual revenue of at least 8,000,000 Yuan, and is in good
20 standing with the Business and Commerce Bureau in China. Second, the Chinese parent company
21 must capitalize the US subsidiary. And Third, after obtaining the L1 visa, the applicant needs to be
22 working in the US subsidiary. The US subsidiary company must be in good financial shape, and
23 must show sufficient revenue on the tax returns and operate with a number of employees.

24 19.    In this Project Statement, Liu represented that instead of the mobile gaming app, he
25 had switched his business plan. His new business plan is to develop an app, which would serve as a
26 platform for travel agencies in North America, while the target audience was Chinese tourists. To
27 make their product unique, he intended to offer RV rental and travel packages to attract Chinese
28 tourists.

20. In the Project Statement, Liu stated

"I will gather my high end, upper grade friends to raise angel funds via crowdfunding, the goal is to raise $500,000-$1,000,000. It has been confirmed that the General Manager of Vipshop North America, General Manager of Sohu Changyou North America, and alumni of USC and Beijing University and Tsinghua University are all joining. With their joining, the success of this project is basically guaranteed."

21. Between November 2014 and May 2015, Liu had travelled to Beijing many times to meet with Wang, in an attempt to lure Wang into his scheme. During those meetings, Liu held himself out as an expert in immigration laws relating to L1 visas. He said his "green card" was obtained via L1 visa.

22. Defendant Liu repeatedly promised Wang that he would prepare all the documents for Wang, so that Wang could get an L1 visa to enter the United States, and once Wang entered the United States, Wang would be offered a position at Liu's company in the U.S. to make a living.

23. Most importantly, he promised that his plan is "**risk free**," as he promised Wang that if she was unable to obtain the L1 visa, he (Liu) would refund the money to her (Wang).

24. Induced by Defendant's representations to Plaintiff, and in reliance thereon, on or about July 28, 2015, pursuant to Liu's request and instructions, Wang, through a friend, wired $100,000 to Liu's personal bank account with Chase Bank in Hacienda Heights, California, as payment for his services in preparation of the documents for the L1 visa.

25. On September 6, 2015, upon Defendant's urging, Plaintiff signed an agreement entitled Investment Term Sheet (the "Agreement"), which was provided by Liu. The Agreement was written in Chinese only, as both parties speak Chinese. The material terms are as follows:

   i. Party A (Wang) has fully understood Party B (Liu)'s business plan for the project of overseas RV tour of "Ren Xing You" (hereinafter "Project"). Party A and Party B entered into the agreement, wherein Party A will invest funds and start business together with Party B. The following agreements were reached through full negotiation between Party A and Party B.

   ii. Party B (meaning Defendant Liu) has made a complete business plan for the Ren

Xing You Project. Party B will further implement the Project.

    iii.    The Ren Xing You Project involves two entities: Screaming Travel company, which has been registered in the US, and Ren Xing You (Beijing) Technology Co., Ltd., which has been registered in China.

    iv.    Party A (meaning, Plaintiff Wang) will invest $300,000 US dollars as the seed round investment, accounting for 4.5% of the initial offerings of the Project with respect to Party A's stock percentage in the seed round.

    v.    Party B will deposit the $200,000.00 from the company account of Party B's Hebei High-Point Technology Co., Ltd. to the US company account of Screaming Travel US.

    vi.    The investment funds under this agreement are to be used for exclusive purpose of the Chinese company and the US company involved in the Project, and shall not be used for any other purposes, and shall not be used to satisfy any debts or liabilities of Party B not related to this Project.

    vii.    Party A, as a shareholder, has the right of inspection, and the right to know the use of funds invested by Party A at any time.

    viii.    Party A has the right to request termination of funds transaction when Party A understands that there is a change in funds that violates any requirements of this Agreement.

    ix.    Party B shall prepare the relevant documents for L1 petition for a managerial role, to assist Party A in obtaining the L1 visa.

    x.    Party B shall use its best efforts to assist with Party A with regards to the L1 immigration. Party A shall bear all relevant costs.

    xi.    Party B has the responsibility and obligation to use his best efforts to protect Party A's rights and interests.

26.    Integrated into the above material contract terms are the oral representations made by Liu above.

27.    The Agreement provided that Liu has registered "Screaming Travel" company in

the US and Ren Xing You Beijing Information Technology Ltd. in Beijing, China (collectively "Ren Xing You Project" or "RXY Project").

28. Pursuant to the website of the Secretary of State of California, there is no company with the name "Screaming Travel" in California at the time of filing this complaint.

29. Plaintiff is informed and believes, and on that basis alleges, that Screaming Travel is the fictitious business name of Fulie International Group, a California corporation, formed, operated and/or controlled by Liu.

30. Plaintiff is informed and believes, and on that basis alleges, that Ren Xing You Beijing Information Technology Co., Ltd. is a company formed on July 20, 2015 in the City of Beijing, China. Plaintiff is further informed and believes, and on that basis alleges, that Ren Xing You Beijing Information Technology Co., Ltd. is a company formed, operated and/or controlled by Liu.

31. Per the agreement terms, Wang shall invest $300,000 to Defendant's unspecified company. And upon receipt of the funds, Liu shall cause his company, Hebei High-Point Technology Co., Ltd., to transfer the funds received to the bank account of Screaming Travel in the US.

32. Plaintiff is informed and believes, and on that basis alleges, that Hebei High-Point Technology Co., Ltd. was a company registered in Hebei Province, China, and was formed, operated and/or controlled by Liu.

33. It was specifically provided in the Agreement, that any funds received under this agreement shall be used **solely** for the purpose of the business of the RXY Project, and shall not be used by Liu for any other purposes not relating to the Project. The Agreement prohibits Liu's use of the funds to satisfy his personal debts.

34. Pursuant to the Agreement, Wang, as shareholder, has right of inspection, and the right to access the financial records of the company. Wang also has the right to stop any misuse of funds.

35. Most importantly, under the Agreement, Liu shall prepare all required documents in order to obtain the L1 Visa for the benefit of Wang.

36. On October 20, 2015, upon Defendant's urging, Wang, through her husband, wired the equivalent of $200,000 USD, which is 1,269,400 Yuan, into a bank account designated by Liu. The money was wired into the bank account of Hebei High-Point Technology Co., Ltd. as directed by Liu.

37. Plaintiff is informed and believes, and on that basis alleges, that in or about November 2015, Liu hired an immigration attorney Daqin Zhang in Los Angeles to file the application for L1 visa on behalf of Liu's company, namely Fulie International Group, a California corporation, for the benefit of Wang.

38. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Defendant has repeatedly promised Plaintiff that his companies in China and in the U.S. both met the criteria as required under the immigration laws to sponsor an L1 visa, and that he would prepare all the documents necessary with the immigration attorney to get the L1 visa for Plaintiff. He repeatedly assured Plaintiff that "everything is under control," and assured Plaintiff that "there is nothing to worry about."

39. Plaintiff is informed and believes, and on that basis alleges, that on December 10, 2015, the immigration attorney Daqin Zhang filed the application for the L1 visa on behalf of Fulie International Group for the benefit of Wang.

40. On or about January 27, 2016, Plaintiff received email from the immigration attorney Mr. Zhang's office, informing her that the application for L1 visa was denied by the USCIS.

41. In or about March 2016, Defendant explained to Plaintiff that the denial was a result of Mr. Zhang, the immigration attorney's incompetent work and bad strategy. Defendant said Mr. Zhang had agreed to file the L1 application again, this time free of charge.

42. In an email Defendant reported to Plaintiff the new strategy for L1 visa, and asked Plaintiff to give him some time to work on his business, which would greatly improve the chances of having the L1 petition approved. He asked Wang to wait for three to four months.

43. In or about September 2016, Defendant again reported to Plaintiff that he had been discussing the business plan with Ms. Zhang. They have made revisions to the business plan to

ensure the approval of L1 visa. Defendant also represented that in addition to Plaintiff's $300,000 investment, he had raised an additional 3,000,000 Yuan (equivalent of approximately $440,000 USD from his friends). Plaintiff is informed and believes, and on that basis alleges, that this information is false.

44. In October 2016, Defendant still had not delivered on his continued promises. Therefore, Plaintiff was worried that Defendant's business plan may not be sufficient to sponsor an L1 visa, and she had lost confidence in Defendant.

45. In or about October 2016, Plaintiff requested refund of her money. Defendant said he was in a position to provide refunds to Wang, however, he/his company was short of cash, and could not provide the refund to Plaintiff right away. Rather, Defendant asked Plaintiff to give him some time to get the cash needed and he would refund Plaintiff.

46. Plaintiff trusted Defendant's representation to give her a refund.

47. From November 2016 to June 2017, Defendant continuously communicated to Plaintiff about the efforts he had made in furtherance of providing the refund to her. Defendant also suggested that Plaintiff gave him another chance at sponsoring her L1 visa. Defendant represented that he had learned from the last failure, and made a lot progress on the business. Plaintiff respected Defendant's efforts in turning the business around, and allowed Defendant additional time to issue her the refund.

48. In May 2017, Plaintiff was informed that Defendant had sold vehicles owned by Fulie International Group, the company Plaintiff supposedly invested in, including an RV, and in exchanged, purchased a black Mercedes Benz for his personal use.

49. In June 2017, Plaintiff Wang met Defendant Liu in the U.S. and saw Defendant was driving the black Mercedes Benz.

50. Plaintiff is informed and believes, and on that basis alleges, that rather than use the funds exclusively for the Project, Liu diverted the funds to other purposes that were undisclosed and contrary to the representations made by Defendant.

51. Plaintiff is informed and believes, and on that basis alleges, that of the $300,000 she invested, only $220,000 was transferred to Fulie International Group, whereas the entire $300,000

received by Liu was supposed to be transferred to Fulie International Group, dba Screaming Travel's bank account.

52. At all time herein mentioned, Defendant has never disclosed to Plaintiff about his misuse of funds, or his failure to transfer all funds from the Chinese company to Fulie International Group, as required under the Agreement.

53. Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this complaint, contrary to Liu's promises and representations, both of the Chinese companies controlled by Liu, namely Hebei High-Point Technology Co., Ltd., and Ren Xing You (Beijing) Information Technology Ltd., were undercapitalized, and/or lacked the financial ability to sponsor an L1 visa for the benefit of Plaintiff. Specifically, the Chinese companies did not have the financial ability to remunerate Plaintiff as managerial personnel and the ability to commence doing business in the United States.

54. At all-time herein mentioned, Defendant did not disclose to Plaintiff that the Chinese companies he controlled Hebei High-Point Technology Co., Ltd., and Ren Xing You (Beijing) Information Technology Co., Ltd. were undercapitalized, and/or lacked financial ability to sponsor the L1 visa.

55. Since June 2017, Defendant has made numerous representations that he would indeed provide refund to Plaintiff, as soon as he brought his company on track.
In or about September 2019, Plaintiff still hadn't received any refunds from Defendant. Plaintiff felt the wait would never end, and this instant case follows.

56. Plaintiff filed a Complaint for damages in the Orange County Superior Court, Case No. 30-2019-01100427-CU-BC-CJC ("State Action"), which was later amened on August 6, 2020. The First Amended Complaint sought damages by Plaintiff against Defendant for: 1) breach of contract; 2) securities transaction fraud and deceit; 3) fraud; 4) negligent misrepresentation; 5) violation of business and professions code section 17200, et. seq.; 6) constructive trust; 7) accounting; 8) indebitatus assumpsit.

57. Trial in the State Action was set for April 26, 2021 and continued until October 18, 2021.

58. Defendant filed for bankruptcy protection on October 12, 2021 but waited to inform Plaintiff's counsel about the bankruptcy until the eve of Trial in the State Action, so as to cause Plaintiff's counsel to incur additional costs and attorney's fees.

### FIRST CLAIM FOR RELIEF

(Determination That Debt Is Nondischargeable Under 11 U.S.C. §523(a)(2)(A).

59. Plaintiff realleges and incorporates herein by this reference Paragraphs 1 through 58 of this Complaint as set forth in their entirety.

60. The debt due to Plaintiff from Defendant is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because a bankruptcy discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

61. Defendant is indebted to the Plaintiff in the sum of not less than $300,000 plus costs, and interest, because Defendant obtained money from Plaintiff by fraud as stated in detail above.

62. Plaintiff is now informed and believes, and on that basis alleges, that Defendant has entered into other similar fraudulent transactions to induce individuals in China who want to be American citizens to provide Defendant with a substantial of money only to have the money taken without keeping the promise of obtaining citizenship for said Chinese citizens.

63. As stated above in detail, the representations made by Defendant to Plaintiff were false and fraudulent when made and were made with the intent to deceive and defraud Plaintiff and to induce Plaintiff into providing a substantial amount of money to Defendant of no less than $300,000.

64. Plaintiff did not have knowledge of the falsity of the representations made by Defendant at the time the representations were made, and in reasonable reliance on those representations, Plaintiff made payments as described herein.

65. Plaintiff has been damaged in an amount of no less than $300,000, plus interest, attorney's fees, and costs of collection.

66. The damages caused to Plaintiff by Defendant are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

(Determination That Debt is Nondischargeable Under 11 U.S.C. §523(a)(4)

67. Plaintiff realleges and incorporates herein by this reference Paragraphs 1 through 66 of this Complaint as set forth in their entirety.

68. The debt due to Plaintiff from Defendant is nondischargeable under 11 U.S.C. § 523(a)(4) because a bankruptcy discharge does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

69. Plaintiff had a relationship of trust with Defendant. Defendant developed this relationship of trust by advising and counseling Plaintiff on obtaining an L1 Visa, and arranging to manage Plaintiff's financial affairs in connection with the investment described herein

70. Pursuant to that relationship of trust, Plaintiff provided Defendant with $300,000 to make her a United States citizen as described in detail herein.

71. Plaintiff is informed and believes, and based thereon alleges, that Defendant fraudulently converted and used Plaintiff's money for Defendant's own benefit, and that Defendant specifically intended to do so.

72. Plaintiff is informed and believes, and based thereon alleges, that Defendant did not use the money in large part to help make Plaintiff a United States citizen but instead spent the money on his own personal luxury automobile and other personal matters.

73. As a result of Defendant's fraud or defalcation while acting in a fiduciary capacity, or as a result of Defendant's embezzlement, or as a result of both, Plaintiff has suffered damages.

74. Defendant is indebted to the Plaintiff in an amount not less than $300,000, based upon the damages caused to Plaintiff by Defendant's fraud or defalcation while acting in a fiduciary capacity, or Defendant's embezzlement, or both.

75. The damages caused to Plaintiff by Defendant are nondischargeable under 11 U.S.C. § 523(a)(4).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. On the First Claim for Relief, for a determination that the damages caused to Plaintiff by Defendant are nondischargeable under 11 U.S.C. § 523(a)(2)(A);

2. On the Second Claim for Relief, for a determination that the damages caused to Plaintiff by Defendant are nondischargeable under 11 U.S.C. § 523(a)(4);

3. On all Claims for Relief, that Plaintiff have judgment against Defendant in an amount not less than $300,000.00 plus attorneys' fees, costs, prejudgment interest, and postjudgment interest according to proof;

5. On all Claims for Relief, for costs of suit incurred herein, including reasonable attorneys' fees to the extent permissible under law; and

6. On all Claims for Relief, such other and other further relief as the Court deems just and proper.

DATED: January 19, 2022    **FRANSEN & MOLINARO, LLP**

By: /s/ Nathan Fransen
NATHAN FRANSEN, ESQ.
Attorneys for Plaintiff, **Shaohui Wang**

DATED: January 19, 2022    **TIEDT & HURD**

By: /s/ John E. Tiedt
JOHN E. TIEDT, ESQ.
Attorneys for Plaintiff, **Shaohui Wang**